HERITAGE VILLAGE CHURCH AND MISSIONARY FELLOWSHIP, INC.
PLAINTIFF, THE HOLY SPIRIT ASSOCIATION FOR THE UNIFICATION
OF WORLD CHRISTIANITY, INTERVENING PLAINTIFF v. THE STATE OF
NORTH CAROLINA, RUFUS L. EDMISTEN, ATTORNEY GENERAL OF NORTH
CAROLINA; SARAH T. MORROW, SECRETARY OF HUMAN RESOURCES OF THE
STATE OF NORTH CAROLINA; AND PETER S. GILCHRIST III, DISTRICT AT-
TORNEY FOR THE 26TH PROSECUTORIAL DISTRICT OF NORTH CAROLINA,
DEFENDANT-APPELLANTS

No. 7826SC769

(Filed 3 April 1979)

1. **Constitutional Law § 22; Charities and Foundations § 2— religious organiza-
tion—solicitation of funds—protection of First Amendment**
        The solicitation of funds by plaintiff religious organizations is a religious
activity protected by the First Amendment.

2. **Constitutional Law § 22— regulation of religious activity**
        Even though an activity is religious, the State may regulate it if the
regulation does not: (1) involve a religious test; (2) unreasonbly burden or delay
the religious activity; or (3) discriminate against one because he is engaged in
an activity for a religious purpose.

3. **Constitutional Law § 22; Charities and Foundations § 2— Solicitation of
Charitable Funds Act—unconstitutional prior restraint on religion**
        Provisions of the Solicitation of Charitable Funds Act which require
religious organizations soliciting contributions within the State to obtain a
license to solicit from the Secretary of the Department of Human Resources,
G.S. 108-75.6, and which give the Secretary the discretion to revoke, suspend
or deny issuance of a license upon finding that an unreasonable percentage of
the contributions has not been or will not be applied to a religious purpose,
G.S. 108-75.18(4), constitute a prior restraint on the exercise of religion and
violate the First and Fourteenth Amendments to the U. S. Constitution and
Art. I, §§ 13 and 19 of the N. C. Constitution.

4. **Constitutional Law § 7.1; Charities and Foundations § 2— Solicitation of
Charitable Funds Act—impermissible delegation of legislative power**
        Provisions of the Solicitation of Charitable Funds Act which give the
Secretary of the Department of Human Resources authority to revoke, sus-
pend or deny a license if he finds that the applicant is or has been engaged in
a fraudulent transaction, a solicitation would be a fraud upon the public, or an
unreasonable percentage of contributions has not been or will not be applied to
a charitable purpose, G.S. 108-75.18(2), (3) and (4), constitute an impermissible
delegation of legislative powers in violation of Art. I, § 6 and Art. II, § 1 of
the N. C. Constitution, since no adequate guiding standards are provided to
control the Secretary's determination.

**5. Constitutional Law § 22; Charities and Foundations § 2— Solicitation of Charitable Funds Act—exemptions of certain religious organizations—violation of Establishment of Religion Clause**

The statute exempting organizations which are established for religious purposes or which serve religion by the preservation of religious rights from obtaining a license to solicit funds except when engaged in secular activities or when the organization derives its support primarily from contributions solicited from persons other than its own members, G.S. 108-75.7(a)(1), violates the Establishment of Religion Clause of the First Amendment of the U. S. Constitution, since the effect of the statute is to require all nondenominational ministries to obtain a license while the traditional denominational churches are exempted from obtaining a license.

**6. Constitutional Law §§ 20, 22; Charities and Foundations § 2— Solicitation of Charitable Funds Act—exemptions—denial of equal protection**

Provisions of G.S. 108-75.7(a)(1), (5), (7) and (8) which exempt from the licensing requirements of the Solicitation of Charitable Funds Act religious organizations which solicit primarily from their own members, organizations which solicit solely from their own members, local posts of veterans' organizations, fraternal beneficiary societies, and certain nonprofit community, civic and garden clubs violate the Equal Protection Clause of the U. S. Constitution and Art. I, §§ 13 and 19 of the N. C. Constitution because they (a) are arbitrary and irrational, (b) impermissibly infringe upon First Amendment freedoms, and (c) discriminate against preferred freedoms of nondenominational religious groups while favoring secular groups.

**7. Constitutional Law § 22; Charities and Foundations § 2— Solicitation of Charitable Funds Act—limitation on fund-raising expenses of religious organizations—violation of First Amendment**

Provisions of G.S. 108-75.18(6) permitting the Secretary of the Department of Human Resources to revoke, suspend or deny issuance of a license to solicit funds to a religious organization if he finds that the organization's solicitation and fund-raising expenses will exceed 35% of the total monies raised by solicitation or fund-raising activities violates freedoms protected by the First Amendment of the U. S. Constitution.

**8. Constitutional Law § 23; Charities and Foundations § 2— Solicitation of Charitable Funds Act—denial of license to person enjoined in another state—denial of due process**

The provisions of G.S. 108-75.20(h)(2) prohibiting persons from soliciting funds in North Carolina if they have ever been enjoined from soliciting in any other state violates the Due Process Clauses of the U. S. and N. C. Constitutions in that it denies the opportunity to solicit on the basis of a permanent and irrebuttable presumption of unfitness when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.

9. **Constitutional Law § 22; Charities and Foundations § 2— Solicitation of Charitable Funds Act—religious organization soliciting from own "members"—exemption void for vagueness**

　　Provisions of G.S. 108-75.7(a)(1) and (5) which allow licensing exemptions to religious organizations that solicit funds primarily or entirely from their own "members" are void for vagueness since the term "members" is not defined and men of common intelligence must necessarily guess at its meaning and differ as to its application.

　　Judge MITCHELL concurring.

APPEAL by defendants from *Ervin, Judge.* Judgment entered 27 June 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 18 January 1979.

Plaintiff Heritage Village Church and Missionary Fellowship (hereinafter referred to as Heritage Village) filed a complaint on 17 August 1977 seeking a determination of the validity of G.S. 108-75.1 *et seq.*, the Solicitation of Charitable Funds Act (hereinafter cited as the Act), and a preliminary injunction enjoining defendants from enforcing the provisions of the Act against them. Plaintiff Heritage Village is a nonprofit corporation engaged in substantial activity in the State of North Carolina in pursuit and furtherance of the promotion and advocacy of the Christian' religion. Plaintiff Heritage Village produces television and radio communications and programs of a religious nature and derives the majority of its financial support from contributions addressed to members of its radio and television audience. Plaintiff Heritage Village alleged that as applied to it, the provisions of the Act violated the Fourteenth Amendment to the Constitution of the United States and Article I, Sections 1, 13, 14, and 19 of the Constitution of North Carolina. Subsequently, plaintiff Heritage Village amended its complaint and alleged:

　　" '7. That the Act, and more particularly, but without limitation, the provisions thereof hereinafter mentioned, both upon its face and as applied to this plaintiff, is unconstitutional and void, in that:

　　'a. The Act nowhere defines the term "members" as used in GS 108-75.7(a)(1), thereby depriving plaintiff of due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States and of Article I, Section 19, of the Constitution of North Carolina.

'b. GS 108-75.7(a)(1) purports to exempt from the licensing requirements of the Act organizations established for "religious purposes" as defined by GS 108-75.3(17), thereby creating an establishment of religion and denying to plaintiff the equal protection of the laws, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Sections 13 and 19, of the Constitution of North Carolina.

'c. GS 108-75.7(a)(1) purports to exempt from the licensing requirements of the Act only such religious organizations as derive their financial support primarily from contributions solicited from their own members, thereby creating an establishment of religion and denying to plaintiff the equal protection of the law, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Sections 13 and 19, of the Constitution of North Carolina.

'd. GS 108-75.7(a)(8) and (9) purport to exempt certain non-religious organizations from the licensing requirements of the Act, without regard to the source of their financial support, thereby denying plaintiff the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States and of Article I, Section 19, of the Constitution of North Carolina.

'e. The Act, taken as a whole, requires plaintiff to apply for a license as a prerequisite to solicitation of contributions for its religious endeavors, thereby denying to plaintiff the right of free speech and interfering with the free exercise of religion, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Sections 13 and 14, of the Constitution of North Carolina.

'f. GS 108-75.7(a)(1) requires religious organizations to apply for a license with respect to secular activities, as defined by GS 108-75.3(21), thereby interfering with the free exercise of religion, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Section 13, of the Constitution of North Carolina.

'g. GS 108-75.18(2), (3) and (4) authorize and require defendant Secretary and her successors to revoke, suspend or deny a license upon a finding that the applicant has engaged in a fraudulent transaction or enterprise or that a solicitation would be a fraud upon the public, or upon a finding that an unreasonable percentage of contributions solicited will not be applied to a charitable purpose, without providing any standards or guidelines to be followed in making such findings, in violation of the Fourteenth Amendment to the Constitution of the United States and of Article I, Section 19, of the Constitution of North Carolina.

'h. GS 108-75.18(4) authorizes and requires the defendant Secretary and her successors to revoke, suspend or deny a license upon a finding that an unreasonable percentage of the contributions solicited will not be applied to a charitable purpose, including a religious purpose, thereby giving defendant Secretary the discretion to determine what is a religious purpose, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Sections 13 and 19, of the Constitution of North Carolina.

'i. GS 108-75.18(6) authorizes and requires defendant Secretary and her successors to revoke, suspend or deny a license upon a finding that the expenses of solicitation and fund raising will exceed 35% of the total contributions raised, in violation of the First and Fourteenth Amendments to the Constitution of the United States and of Article I, Sections 1, 13, 14 and 19, of the Constitution of North Carolina.'

And the plaintiff further moves the Court for leave to amend its Complaint by inserting a Paragraph 7A, to immediately follow Paragraph 7 and immediately precede Paragraph 8, said Paragraph 7A to read as follows:

'7A. That in the alternative to the foregoing allegations, plaintiff alleges that it derives a substantial majority of its financial support from contributions solicited from its own members within the meaning of said term as used in GS 108-75.7(a)(1), and therefore is exempt from the licensing requirements of the Act; but that the defendants have denied said exempt

status to plaintiff and plaintiff, therefore, desires that the Court find, conclude and declare that it is so exempt.' "

On 20 October 1977, plaintiff Holy Spirit Association for the Unification of World Christianity (hereinafter referred to as Holy Spirit Association) filed a complaint seeking declaratory and injunctive relief from enforcement of the Act on the grounds that the Act violated the Constitution of the United States and the Constitution of North Carolina. Plaintiff Holy Spirit Association alleged that:

"(a) The Act [Sec 108-75.7(6)-(8)] exempts from its licensing provisions certain secular organizations (i.e., garden clubs) without regard to whether their financial support is derived primarily from contributions solicited from members or non-members. At the same time, the Act [Sec 108-75.7(a)(1)] exempts from its licensing provisions all religious corporations except those deriving financial support primarily from contributions solicited from non-members. These provisions taken together violate the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and Sections 1, 13, 14 and 19 of Article I of the Constitution of North Carolina on their face and as applied because—

(i) They establish an arbitrary and unreasonable classification between similarly-financed secular and religious organizations; and

(ii) They establish an arbitrary and unreasonable classification between religious organizations based upon their source of financial support.

(b) The Act [Sec 108-75.18(4)] authorizes the Secretary to deny, revoke or suspend the license for public solicitation of any charitable organization, upon a finding that an unreasonable percentage of the contributions received are not applied for a charitable purpose, including a religious purpose. This provision violates the First and Fourteenth Amendments to the Constitution of the United States and Sections 1, 13, 14 and 19 of Article I of the Constitution of North Carolina on its face and as applied because it requires

the Defendant Secretary to determine whether the use to which solicited contributions are applied is a 'religious purpose.'

(c) The Act [Sec 108-75.18(6)] authorizes the Secretary to deny, revoke or suspend the license for public solicitation of any charitable organization upon a finding that the solicitation and fund-raising expenses will exceed 35% of the total contributions. This provision violates the First and Fourteenth Amendments to the Constitution of the United States and Sections 1, 13, 14 and 19 of Article I of the Constitution of North Carolina on its face and as applied because it places a fixed percentage limit on the costs of solicitation of a religious organization.

(d) The Act [Sec 108-75.20(h)] forbids any person—and in certain circumstances organizations—from soliciting within North Carolina if he has been convicted in any jurisdiction of any felony unless his civil rights have been restored or if he has been prohibited from soliciting in any other jurisdiction unless the Secretary determines in writing that he is presently entitled to solicit in the other jurisdiction. This provision violates the First and Fourteenth Amendments to the Constitution of the United States and Sections 1, 13, 14 and 19 of Article I of the Constitution of North Carolina on its face and as applied because the standards for excluding persons from soliciting within North Carolina bear no reasonable relationship to their qualifications to solicit and because it establishes an irrefutable presumption that such persons are necessarily unfit to solicit charitable contributions in North Carolina.

11. The Act [Sec 108-75.22] provides for civil and criminal sanctions against religious corporations which violate the Act."

Plaintiff Holy Spirit Association is a Christian church which engages in fund-raising activities in North Carolina and elsewhere by soliciting money from members and nonmembers alike. Approximately eighty percent of plaintiff Holy Spirit Association's income is obtained from solicitation of nonmembers.

Defendants denied the unconstitutionality of the Act and sought preliminary injunctions restraining plaintiffs from solicit-

ing contributions from persons other than their own members until they filed applications for a license to solicit as required by the Act. On 28 March 1978, defendants and intervening plaintiff Holy Spirit Association respectively moved for summary judgment. On 25 April 1978, plaintiff Heritage Village moved for summary judgment. The trial court, in its judgment filed 27 June 1978, allowed summary judgment for plaintiffs.

Defendants appealed.

*Attorney General Edmisten, by Special Deputy Attorney General William F. O'Connell and Assistant Attorney General Robert R. Reilly, for defendant appellants.*

*Wardlow, Knox, Knox, Robinson & Freeman, by H. Edward Knox and John S. Freeman, for Heritage Village Church and Missionary Fellowship, Inc., plaintiff appellee.*

*Melrod, Redman & Gartlan, by Dorothy Sellers and Roberta Colton; Chambers, Stein, Ferguson & Becton, by Jonathan Wallas and Louis L. Lesesne, Jr., for Holy Spirit Association for the Unification of World Christianity, intervening plaintiff appellee.*

ERWIN, Judge.

[1]  We note at the outset that plaintiffs' solicitation of funds is a religious activity protected by the First Amendment.

[2]  In *Murdock v. Pennsylvania,* 319 U.S. 105, 110-11, 87 L.Ed. 1292, 1297, 63 S.Ct. 870, 146 A.L.R. 81 (1943), the United States Supreme Court, in striking down a license tax on the sale of religious tracts, stated:

> "The alleged justification for the exaction of this license tax is the fact that the religious literature is distributed with a solicitation of funds. Thus it was stated in *Jones v. Opelika, supra* (316 US p. 597, 86 L ed 1702, 62 S Ct 1231, 141 ALR 514), that when a religious sect uses 'ordinary commercial methods of sales of articles to raise propaganda funds,' it is proper for the state to charge 'reasonable fees for the privilege of canvassing.' Situations will arise where it will be difficult to determine whether a particular activity is religious or purely commercial. The distinction at times is vital. As we stated only the other day in *Jamison v. Texas,*

318 US 413, 417, ante, 869, 873, 63 S Ct 669. 'The state can prohibit the use of the streets for the distribution of purely commercial leaflets, even though such leaflets may have "a civic appeal, or a moral platitude" appended. *Valentine v. Chrestensen,* 316 US 52, 55, 86 L ed 1262, 1265, 62 S Ct 920. They may not prohibit the distribution of handbills in the pursuit of a clearly religious activity merely because the handbills invite the purchase of books for the improved understanding of the religion or because the handbills seek in a lawful fashion to promote the raising of funds for religious purposes.' But the mere fact that the religious literature is 'sold' by itinerant preachers rather than 'donated' does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. The constitutional rights of those spreading their religious beliefs through the spoken and printed word are not to be guaged by standards governing retailers or wholesalers of books. . . . It should be remembered that the pamphlets of Thomas Paine were not distributed free of charge. It is plain that a religious organization needs funds to remain a going concern."

The Supreme Court recognized the need for a religious organization to raise funds in order to remain an ongoing concern. Even though an activity is religious, the State may regulate it if the regulation does not: (1) involve a religious test; (2) unreasonably burden or delay the religious activity, *Cantwell v. Connecticut,* 310 U.S. 296, 305, 84 L.Ed. 1213, 1218, 60 S.Ct. 900, 128 A.L.R. 1352 (1940); or (3) discriminate against one because he is engaged in an activity for a religious purpose. *Prince v. Massachusetts,* 321 U.S. 158, 177-78, 88 L.Ed. 645, 658-59, 64 S.Ct. 438, *reh. denied,* 321 U.S. 804, 88 L.Ed. 1090, 64 S.Ct. 784 (1944), (Jackson, J., concurring in result, Roberts, J. and Frankfurter, J., concurring). It is with these principles in mind that we examine the Act before us.

G.S. 108-75.6 of the Solicitation of Charitable Funds Act requires charitable organizations which intend to solicit contributions within the State or have funds solicited in the State on their behalf to file an application for a license to solicit. *See* G.S. 108-75.6.

Under G.S. 108-75.18, the Secretary of the Department of Human Resources must revoke, suspend or deny issuance of a license if he finds:

"(2) The applicant is or has engaged in a fraudulent transaction or enterprise.

(3) A solicitation would be a fraud upon the public.

(4) An unreasonable percentage of the contributions solicited, or to be solicited, is not applied, or will not be applied to a charitable purpose.

(5) The contributions solicited, or to be solicited, are not applied, or will not be applied to the purpose or purposes as represented in the license application.

(6) Solicitation and fund-raising expenses (including not only payments to professional solicitors, but also payments to professional fund-raising counsel, and internal fund-raising and solicitation salaries and expenses) during the year immediately preceding the date of application have exceeded, or for the specific year in which the application is submitted will exceed, thirty-five percent (35%) of the total moneys, pledges, or other property raised or received or to be raised or received by reason of any solicitation and/or fund-raising activities or campaigns."

G.S. 108-75.7(a) in pertinent part provides:

"§ 108-75.7. *Exemptions from licensing.* — (a) The following persons shall be exempt from the licensing provisions of this Part:

(1) A religious corporation, trust, or organization incorporated or established for religious purposes, or other religious organizations which serve religion by the preservation of religious rights and freedom from persecution or prejudice or by the fostering of religion, including the moral and ethical aspects of a particular religious faith: Provided, however, that such religious corporation, trust or organization established for religious purposes shall not be exempt from filing a license application with respect to

secular activities, nor shall such religious corporation, trust or organization established for religious purposes be exempt from filing a license application if its financial support is derived primarily from contributions solicited from persons other than its own members, excluding sales of printed or recorded religious materials. . . .

* * *

(5) Organizations which solicit only within the membership of the organization by the members thereof.

* * *

(7) A local post, camp, chapter, or similarly designated element, or a county unit of such elements, of a bona fide veteran's organization which issues charters to such local elements throughout this State; a bona fide organization of volunteer firemen; a bona fide ambulance or rescue squad association; fraternal beneficiary societies, orders or associations operating under the lodge system; or bona fide auxiliaries or affiliates of such organizations: Provided that all of the fund-raising activities are carried on by members of such organizations or of auxiliaries or affiliates thereof, and such members receive no compensation directly or indirectly therefor.

(8) Any nonprofit community club, civic club, garden club, or other similar civic group organized and in existence for more than two years, with no capital stock or salaried executive employees, officers, members or agents, with at least 10 members with annual dues collected of not less than five dollars ($5.00) per member, in which all of the funds collected, less reasonable expenses, are disbursed pursuant to the directions of the membership or the board of directors, and with the membership being furnished at least one written report each year by the directors as to its charitable activities."

Thus, the specified organizations are exempt from complying with the licensing provisions of the Act. G.S. 108-75.3(17) defines religious purposes as follows: " 'Religious purposes' shall mean

maintaining or propagating religion or supporting public religious services, according to the rites of a particular denomination." Nowhere in the Act is the term, "members," as used in G.S. 108-75.7(a)(1), defined.

Finally, G.S. 108-75.20(h)(2) prohibits a person or an organization of which such person is an officer, professional fund-raising counsel, or professional solicitor from soliciting if such person has been enjoined by any court or otherwise prohibited from soliciting in any jurisdiction, unless the Secretary shall first determine in writing that such person is entitled to solicit in such jurisdiction at the time of soliciting within this State. *See* G.S. 108-75.20(h)(2). Defendants contend that the Solicitation of Charitable Funds Act is consistent with the First and Fourteenth Amendments of the United States Constitution and the Constitution of North Carolina. With this contention, we do not agree.

The First Amendment of the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." The Fourteenth Amendment has rendered the legislatures of the states as incompetent as Congress to enact such laws. *Cantwell v. Connecticut*, 310 U.S. 296, 84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352 (1940); *Palko v. Connecticut*, 302 U.S. 319, 82 L.Ed. 288, 58 S.Ct. 149 (1937), *overruled on other grounds, Benton v. Maryland*, 395 U.S. 784, 23 L.Ed. 2d 707, 89 S.Ct. 2056 (1969); *In re Williams*, 269 N.C. 68, 152 S.E. 2d 317, *cert. denied*, 388 U.S. 918, 18 L.Ed. 2d 1362, 87 S.Ct. 2137 (1967).

In *Cantwell v. Connecticut, Id.* at 301-02, 84 L.Ed. at 1217, 60 S.Ct. at 902, 128 A.L.R. 1352 (1940), the United States Supreme Court was presented with a similarly worded statute:

| Connecticut Statute | N. C. Statute |
|---|---|
| " 'No person shall solicit money, services, subscriptions or any valuable thing for any alleged religious, charitable or philanthropic cause, from other than a member of the organization for whose benefit such person is soliciting or within the | "§ 108-75.6. *Application for licensing.* — (a) Every charitable organization, except as otherwise provided in this Part, which intends to solicit contributions within the State or have funds solicited on its behalf, shall, prior to any solicitation, file |

county in which such person or organization is located unless such cause shall have been approved by the secretary of the public welfare council.

Upon application of any person in behalf of such cause, the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity, and, if he shall so find, shall approve the same and issue to the authority in charge a certificate to that effect. . . .' "

an application with the Department upon forms prescribed by it for a license to solicit."

"§ 108-75.18. *Denial, suspension or revocation of license.* — The Secretary shall revoke, suspend or deny issuance of a license to a charitable organization, professional fund-raising counsel or professional solicitor at any time upon a finding that:

\* \* \*

(4) An unreasonable percentage of the contributions solicited, or to be solicited, is not applied, or will not be applied to a charitable purpose."

[3]   The Supreme Court held that the statute as applied and as construed deprived the appellants in *Cantwell v. Connecticut, supra,* of their liberty without due process of law. In *Cantwell v. Connecticut, Id.* at 305, 84 L.Ed. at 1218, 60 S.Ct. at 904, 128 A.L.R. 1352 (1940), the Supreme Court noted:

"It will be noted, however, that the Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion. He is authorized to withhold his approval if he determines that the cause is not a

religious one. Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth."

Our Solicitation of Charitable Funds Act contains this same flaw. Under G.S. 108-75.18(4), the Secretary must revoke, suspend, or deny issuance of a license if he finds that an unreasonable percentage of the contributions solicited, or to be solicited, is not applied, or will not be applied to a "charitable purpose." *See* G.S. 108-75.18(4). G.S. 108-75.3(2) defines a "charitable purpose" so as to include a religious purpose. G.S. 108-75.18(4) allows the Secretary to withhold his approval of a license if he determines the purpose for which the money is expended is not a religious one. This exercise of discretion constitutes a prior restraint on the exercise of religion and violates the First and Fourteenth Amendments of the United States Constitution and Sections 13 and 19 of Article I of our State Constitution. *See Cantwell v. Connecticut, supra; Intern. Soc. for Krishna Consciousness v. Rochford*, 425 F. Supp. 734 (N.D. Ill. 1977); *Cf. Schneider v. Irvington*, 308 U.S. 147, 84 L.Ed. 155, 60 S.Ct. 146 (1939). Defendants' contention that the Secretary's discretion is subject to judicial correction in an administrative hearing does not remedy the evil. As Mr. Justice Roberts said in *Cantwell v. Connecticut*, 310 U.S. at 306, 84 L.Ed. at 1219, 60 S.Ct. at 904, 128 A.L.R. 1352 (1940):

"Moreover, the availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible. A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action."

Article I, § 6 of our State Constitution provides: "The legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other."

Article II, § 1 of our State Constitution provides: "The legislative power of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives."

The effect of these two provisions in our State Constitution is to elucidate the circumstances in which delegation of legislative powers is permissible. In *Coastal Highway v. Turnpike Authority*, 237 N.C. 52, 60, 74 S.E. 2d 310, 316 (1953), our Supreme Court set forth the law governing such delegation:

> "1. *The question of delegation of legislative power.* —It is a settled principle of fundamental law, inherent in our constitutional separation of government into three departments and the assignment of the lawmaking function exclusively to the legislative department, that (except when authorized by the Constitution, as is the case in reference to certain lawmaking powers conferred upon municipal corporations usually relating to matters of local self-government, Const., Articles VII, VIII, and IX; *Provision Company v. Daves*, 190 N.C. 7, 128 S.E. 593), the Legislature may not abdicate its power to make laws or delegate its supreme legislative power to any other department or body. 11 Am. Jur., Constitutional Law, Sec. 214. See also *Motsinger v. Perryman*, 218 N.C. 15, 20, 9 S.E. 2d 511; *S. v. Curtis*, 230 N.C. 169, 52 S.E. 2d 364, and cases there cited.

> However, it is not necessary for the Legislature to ascertain the facts of, or to deal with, each case. Since legislation must often be adapted to complex conditions involving numerous details with which the Legislature cannot deal directly, the constitutional inhibition against delegating legislative authority does not deny to the Legislature the necessary flexibility of enabling it to lay down policies and establish standards, while leaving to designated governmental agencies and administrative boards the determination of facts to which the policy as declared by the Legislature shall apply. *Provision Company v. Daves, supra.* Without this power, the Legislature would often be placed in the awkward situation of possessing a power over a given subject without being able to exercise it.

> Here we pause to note the distinction generally recognized between a delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, and the conferring of authority or discretion as to its execution. The first may not be done, whereas the latter, if adequate

guiding standards are laid down, is permissible under certain circumstances. 11 Am. Jur., Constitutional Law, Sec. 234."

**[4]** Sections (2), (3), and (4) of G.S. 108-75.18 transgress this line of demarcation. The Legislature leaves to the absolute discretion of the Secretary the determination of when a license is to be issued, revoked, or suspended. No adequate guiding standards are provided to control his determinations. This the Legislature may not do. *See Harvell v. Scheidt, Comr. of Motor Vehicles*, 249 N.C. 699, 107 S.E. 2d 549 (1959).

In *Harvell v. Scheidt, Comr. of Motor Vehicles, supra,* our Supreme Court invalidated G.S. 20-16(a)(5) because it contained no fixed standard or guide for the Department of Motor Vehicles in determining whether or not a driver is an *habitual violator* of the traffic laws. For the same reasons, we hold that Sections (2), (3), and (4) of G.S. 108-75.18 are invalid. To hold otherwise would allow the Secretary's exercise of his determination to serve as a prior restraint on the exercise of plaintiffs' constitutional rights. This our Constitution forbids.

**[5]** G.S. 108-75.7(a)(1) provides:

"§ 108-75.7. *Exemptions from licensing.* — (a) The following persons shall be exempt from the licensing provisions of this Part:

(1) A religious corporation, trust, or organization incorporated or established for religious purposes, or other religious organizations which serve religion by the preservation of religious rights and freedom from persecution or prejudice or by the fostering of religion, including the moral and ethical aspects of a particular religious faith: Provided, however, that such religious corporation, trust or organization established for religious purposes shall not be exempt from filing a license application with respect to secular activities, nor shall such religious corporation, trust or organization established for religious purposes be exempt from filing a license application if its financial support is derived primarily from contributions solicited from persons other than its own members, excluding sales of printed or recorded religious materials."

The statute exempts those religious organizations which are established for *religious purposes* or which serve religion by the preservation of religious rights from obtaining a license to solicit. If such organization established for religious purposes engages in *secular activities* or derives its support *primarily* from contributions solicited from persons *other than its own members*, excluding sales of printed or recorded religious materials, the licensing exemption does not apply.

G.S. 108-75.3(17) provides:

"§ 108-75.3. *Definitions.* — Unless a different meaning is required by the context, the following terms as used in this Part shall have the meanings hereinafter respectively ascribed to them:

\* \* \*

(17) 'Religious purposes' shall mean maintaining or propagating religion or supporting public religious services, according to the rites of a particular denomination."

Plaintiffs have a broad-based, nondenominational ministry which does not adhere to the "rites of a particular denomination." The effect of G.S. 108-75.7(a)(1) is to require all nondenominational ministries to obtain a license before they may solicit, while the traditional denominational church is exempted from obtaining a license. Appellees contend that G.S. 108-75.7(a)(1) creates an establishment of religion and denies them equal protection of the laws. We agree.

The First Amendment forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. *United States v. Ballard,* 322 U.S. 78, 88 L.Ed. 1148, 64 S.Ct. 882 (1944); *Cantwell v. Connecticut, supra.* Such protected freedoms are not limited to members of organized religious bodies, *In re Williams,* 269 N.C. 68, 152 S.E. 2d 317, *cert. denied,* 388 U.S. 918, 18 L.Ed. 2d 1362, 87 S.Ct. 2137 (1967), nor is it restricted to orthodox religious practices. *Follett v. McCormick,* 321 U.S. 573, 88 L.Ed. 938, 64 S.Ct. 717, 152 A.L.R. 317 (1944). The test to determine whether a statute violates the prohibition of the Establishment Clause was stated in *Abington School District v. Schempp,* 374 U.S. 203, 222, 10 L.Ed. 2d 844, 858, 83 S.Ct. 1560 (1963):

"[T]he test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion. *Everson v. Board of Education*, 330 US 1, 91 L ed 711, 67 S Ct 504, 168 ALR 1392, supra; *McGowan v. Maryland*, supra (366 US at 442)."

G.S. 108-75.7(a)(1) violates the Establishment Clause of the First Amendment of the United States Constitution. We do not attribute to the Legislature an intention to advance or promote any religious sect; it is enough that the effect of the statute brings about the prohibited result. *Sherbert v. Verner*, 374 U.S. 398, 10 L.Ed. 2d 965, 83 S.Ct. 1790 (1963). Defendants contend that a rational basis exists for such an exemption. Where First Amendment freedoms are concerned, a rational basis is not enough. *Sherbert v. Verner, supra; West Virginia State Bd. of Edu. v. Barnette*, 319 U.S. 624, 87 L.Ed. 1628, 63 S.Ct. 1178, 147 A.L.R. 674 (1943).

In *West Virginia State Bd. of Edu. v. Barnette, Id.* at 639, 87 L.Ed. at 1638, 63 S.Ct. at 1186, 147 A.L.R. 674 (1943), Mr. Justice Jackson stated:

"[T]he test of legislation which collides with the Fourteenth Amendment, because it also collides with the principles of the First, is much more definite than the test when only the Fourteenth is involved. Much of the vagueness of the due process clause disappears when the specific prohibitions of the First become its standard. The right of a State to regulate, for example, a public utility may well include, so far as the due process test is concerned, power to impose all of the restrictions which a legislature may have a 'rational basis' for adopting. But freedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds."

To pass constitutional muster, the State's interest must be compelling. *Sherbert v. Verner, supra.* We do not find such an interest in the present case. We hold that G.S. 108-75.7(a)(1)

establishes religion in violation of the First Amendment of the United States Constitution. We also hold that it violates the Equal Protection Clause of the Fourteenth Amendment and Sections 13 and 19 of Article I of the North Carolina Constitution.

**[6]** G.S. 108-75.7(a)(1), (5), (7), and (8) exempt from the licensing provisions of the statute religious organizations which solicit primarily from their own members, organizations which solicit solely from their own members, local posts of veteran organizations, fraternal beneficiary societies, and certain non-profit community, civic, and garden clubs. *See* G.S. 108-75.7(a)(1), (5), (7), and (8). The statute requires nondenominational religious organizations which solicit *primarily* from nonmembers to obtain a license irrespective of the size of the soliciting organization. The justification set forth by defendants is that such distinction has a rational basis, and thus does not violate the Equal Protection Clauses of the United States or the North Carolina State Constitutions. We disagree.

The Equal Protection Clauses of the United States and the North Carolina Constitutions impose upon lawmaking bodies the requirement that any legislative classification be based on differences that are reasonably related to the purposes of the act in which it is found. *Morey v. Doud*, 354 U.S. 457, 1 L.Ed. 2d 1485, 77 S.Ct. 1344 (1957); *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976); *State v. Greenwood*, 280 N.C. 651, 187 S.E. 2d 8 (1972).

G.S. 108-75.2 sets forth the purpose of the Solicitation of Charitable Funds Act as follows:

"§ 108-75.2. *Purpose.* — It is the purpose of this Part to protect the general public and public charity in the State of North Carolina; to require full public disclosure of facts relating to persons and organizations who solicit funds from the public for charitable purposes, the purposes for which such funds are solicited, and their actual uses; and to prevent deceptive and dishonest statements and conduct in the solicitations of funds for or in the name of charity."

The statutory exemptions provided in G.S. 108-75.7(a)(1), (5), (7), and (8) cannot withstand even the rational basis standard of equal protection analysis. The statute requires plaintiffs to obtain a license to solicit funds while exempting enumerated secular and

religious groups. It makes an arbitrary and irrational distinction unrelated to the purposes of the statute. *See Royster Guano Co. v. Virginia,* 253 U.S. 412, 64 L.Ed. 989, 40 S.Ct. 560 (1920). There is no showing that religious groups, who solicit primarily from nonmembers in the exercise of their religious activities are more likely to engage in fraudulent or deceptive practices in their public solicitation than the groups exempted, *see Morey v. Doud, supra; Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18 (1968), nor is there any showing that size is an index to the evil at which the statute is directed. *Cf. Engel v. O'Malley,* 219 U.S. 128, 55 L.Ed. 128, 31 S.Ct. 190 (1911). Under the statute, a small religious group that solicits in excess of two thousand dollars ($2,000) primarily from nonmembers, *i.e.,* fifty-one percent, is required to obtain a license; while a larger religious group is exempted from obtaining a license, even though it solicits one million dollars ($1,000,000) as long as fifty percent of the organization's contributions is obtained from members. Organizations which solicit entirely from its own members, bona fide veterans organizations, and certain nonprofit community clubs are exempted from the licensing provisions, regardless of the amount received from their public solicitations. We hold that the exemptions of G.S. 108-75.7(a)(1), (5), (7), and (8) are violative of the Equal Protection Clauses of the United States Constitution and of the North Carolina Constitution, because they are arbitrary and irrational.

G.S. 108-75.7(a)(1), (5), (7), and (8) also violate the Equal Protection Clauses of the United States and the North Carolina Constitutions, because they impermissibly infringe upon the plaintiffs' First Amendment freedoms.

Plaintiff's solicitation of funds is a religious activity protected by the First Amendment of the United States Constitution. *See Follett v. McCormick,* 321 U.S. at 576-77, 88 L.Ed. at 940-41, 64 S.Ct. at 719, 152 A.L.R. 317 (1944); *Murdock v. Pennsylvania,* 319 U.S. at 110-11, 87 L.Ed. at 1297, 63 S.Ct. at 873, 146 A.L.R. 81 (1943); *International Soc. for Krishna Cons., Inc. v. Conslisk,* 374 F. Supp. 1010 (N.D. Ill. 1973). The State may legitimately act to prevent the fraudulent solicitation of its citizens. *See Hynes v. Mayor of Oradell,* 425 U.S. 610, 48 L.Ed. 2d 243, 96 S.Ct. 1755 (1976); *Cantwell v. Connecticut, supra.* But, First Amendment freedoms are in a preferred position. *Follett v. McCormick,* 321 U.S. at 575, 88 L.Ed. at 940, 64 S.Ct. at 719, 152 A.L.R. 317 (1944);

*Murdock v. Pennsylvania, supra.* Restrictions upon First Amendment rights must be narrowly tailored to achieve legitimate State objectives, *Police Department v. Mosley,* 408 U.S. 92, 33 L.Ed. 2d 212, 92 S.Ct. 2286 (1972), and where less intrusive means are available, they must be used. *Shelton v. Tucker,* 364 U.S. 479, 5 L.Ed. 2d 231, 81 S.Ct. 247 (1960). The Solicitation of Charitable Funds Act seeks to protect the public from fraudulent practices in solicitation. Less intrusive means are available. *See State v. Williams,* 253 N.C. 337, 117 S.E. 2d 444 (1960). We hold that the exemptions in G.S. 108-75.7(a)(1), (5), (7), and (8) violate the Equal Protection Clauses of the United States and North Carolina Constitutions. We also hold that the exemptions in G.S. 108-75.7(a)(1), (5), (7), and (8) are unconstitutional, because they discriminate against preferred freedoms of nondenominational religious organizations while favoring those of secular groups.

G.S. 108-75.18 of the Solicitation of Charitable Funds Act provides:

"§ 108-75.18. *Denial, suspension or revocation of license.* — The Secretary shall revoke, suspend or deny issuance of a license to a charitable organization, professional fund-raising counsel or professional solicitor at any time upon a finding that:

. . .

(2) The applicant is or has engaged in a fraudulent transaction or enterprise.

(3) A solicitation would be a fraud upon the public.

(4) An unreasonable percentage of the contributions solicited, or to be solicited, is not applied, or will not be applied to a charitable purpose.

(5) The contributions solicited, or to be solicited, are not applied, or will not be applied to the purpose or purposes as represented in the license application.

(6) Solicitation and fund-raising expenses (including not only payments to professional solicitors, but also payments to profresional fund-raising counsel, and internal fund-raising and solicitation salaries and expenses) during the year immediately preceding the

date of application have exceeded, or for the specific year in which the application is submitted will exceed, *thirty-five percent (35%)* of the total moneys, pledges, or other property raised or received or to be raised or received by reason of any solicitation and/or fund-raising activities or campaigns." (Emphasis added.)

[7]  Pursuant to G.S. 108-75.18(6), the Secretary may revoke, suspend, or deny issuance of a license to a charitable organization, if he finds that the organization's operating expenditures will exceed thirty-five percent of the total monies raised by reason of any solicitation. We hold that this thirty-five percent limitation on expenditures is violative of the First Amendment freedoms protected by the United States Constitution.

In *National Foundation v. City of Forth Worth*, 415 F. 2d 41 (5th Cir. 1969), *cert. denied*, 396 U.S. 1040, 24 L.Ed. 2d 684, 90 S.Ct. 688 (1970), the Fifth Circuit Court of Appeals upheld the validity of a statute which allowed denial of a permit to solicit if the cost of such solicitation exceeded twenty percent of the amount to be raised. However, the Court was quick to note, "A fixed percentage limitation on the costs of solicitation might be undesirable and inapplicable if applied to all types of charitable organizations. What may be proper in one situation may not be so in other situations." *Id.* at 46, *cert. denied*, 396 U.S. 1040, 24 L.Ed. 2d 684, 90 S.Ct. 688 (1970).

In *National Foundation, supra*, the plaintiff was a nonprofit organization. In the case before us, plaintiffs are *religious organizations*. We believe that this is a distinction worth noting. An activity when engaged in may be secular or religious depending on the circumstances. This distinction is oftentimes vital for constitutional purposes. *Murdock v. Pennsylvania, supra.*

In *Buckley v. Valeo*, 424 U.S. 1, 46 L.Ed. 2d 659, 96 S.Ct. 612 (1976), the Supreme Court was faced with an analogous limitation on campaign expenditures in federal elections. In *Buckley v. Valeo*, 424 U.S. at 19-20, 46 L.Ed. 2d at 687-88, 96 S.Ct. at 634 (1976), the Court noted:

"A restriction on the amount of money a person or group can spend on political communication during a campaign

necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs. Speeches and rallies generally necessitate hiring a hall and publicizing the event. The electorate's increasing dependence on television, radio, and other mass media for news and information has made these expensive modes of communication indispensable instruments of effective political speech.

The expenditure limitations contained in the Act represent substantial rather than merely theroretical restraints on the quantity and diversity of political speech. The $1,000 ceiling on spending 'relative to a clearly identified candidate,' 18 USC § 608(e)(1) (1970 ed Supp IV) [18 USCS § 608(e)(1)], would appear to exclude all citizens and groups except candidates, political parties, and the institutional press from any significant use of the most effective modes of communication. Although the Act's limitations on expenditures by campaign organizations and political parties provide substantially greater room for discussion and debate, they would have required restrictions in the scope of a number of past congressional and Presidential campaigns and would operate to constrain campaigning by candidates who raise sums in excess of the spending ceiling." (Footnotes omitted.)

Thus, the Court found the limitations unconstitutional.

As in *Buckley, supra,* plaintiffs are exercising rights protected by the First Amendment. Limiting the amounts of money expendable seriously hampers plaintiffs' ability to effectively exercise their First Amendment freedoms. The limitations are unduly burdensome and thus violative of the First Amendment. *See Cantwell, supra.*

[8]  G.S. 108-75.20(h)(2) provides:

"(h) No person, and no organization of which such person is an officer, professional fund-raising counsel or professional solicitor, shall solicit within the State if:

.  .  .

(2) Such person has ever been enjoined by any court or otherwise prohibited from soliciting in any jurisdiction, unless the Secretary shall first determine in writing that such person is entitled to solicit in such jurisdiction at the time of soliciting within this State."

The primary effect of G.S. 108-75.20(h)(2) is to prohibit persons from soliciting within North Carolina, if they have ever been enjoined from soliciting in any other state. The statute creates a conclusive presumption—that one who has previously been enjoined from soliciting is forever unfit. This presumption is incapable of being overcome by proof of the most positive character. Even if a person were to show that he is presently fit to solicit, G.S. 108-75.20(h)(2) would preclude his solicitation because of some prior enjoining in another state. This enjoining may have taken place without notice or opportunity to be heard; yet the statute would bar solicitation within the State. Where present fitness to conduct the activity sought to be enjoined is relevant, a state may not deprive an individual of an opportunity to conduct that activity without a prior hearing. *See Stanley v. Illinios*, 405 U.S. 645, 31 L.Ed. 2d 551, 92 S.Ct. 1208 (1972); *Bell v. Burson*, 402 U.S. 535, 29 L.Ed. 2d 90, 91 S.Ct. 1586 (1971).

The limits of the power of the State to enact laws to promote the health, safety, welfare, and morals of its people must always be determined with appropriate regard to the particular subject of its exercise. *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 75 L.Ed. 1357, 51 S.Ct. 625 (1931). Here, the statute impinges on the exercise of a religious activity protected by the First Amendment. *See Murdock, supra.* It serves as a prior restraint in the exercise of First Amendment rights in that a person may be inhibited from soliciting without the State ever proving a previous fraudulent solicitation. *Cf. Near v. Minnesota ex rel. Olson, supra.* It is significant that many solicitation statutes have been held to be unconstitutional. *See Hynes v. Mayor of Oradell, supra; Follett v. McCormick, supra; Murdock v. Pennsylvania, supra; Cantwell v. Connecticut, supra; International Soc. for Krishna Cons., Inc. v. Conslisk, supra.* Due process requires at the very least that any person or organization denied a permit on the basis of G.S. 108-75.20(h)(2) be afforded the opportunity to present evidence establishing such person's or organization's fitness to

solicit within the State of North Carolina. *See Vlandis v. Kline,*
412 U.S. 441, 37 L.Ed. 2d 63, 93 S.Ct. 2230 (1973). We hold that
G.S. 108-75.20(h)(2) violates the Due Process Clause in that it
denies the opportunity to solicit on the basis of a permanent and
irrebuttable presumption of unfitness when that presumption is
not necessarily or universally true in fact, and when the State has
reasonable alternative means of making the crucial determination.

[9]  G.S. 108-75.7(a)(1) and G.S. 108-75.7(a)(5) allow licensing ex-
emptions to religious organizations that solicit primarily or entire-
ly from their own "members." The Solicitation of Charitable
Funds Act does not define the term, "members." It is clear from
the Act, however, that "members" is not used in the ordinary
sense of the word. *See* G.S. 108-75.3(12) *(defines membership to
exclude persons granted membership upon making a contribution
as a result of a solicitation).* Plaintiffs are engaged in the solicita-
tion of funds — an act which except for the provisions of the Act
would be otherwise lawful. Should plaintiffs solicit primarily from
persons other than their own "members," they would be guilty of
a misdemeanor. *See* G.S. 108-75.22(d).

G.S. 108-75.7(a)(1) and (5), by failing to define "members," for-
bid or require the doing of an act in terms so vague that men of
common intelligence must necessarily guess at their meaning and
differ as to their application. The sections are void for vagueness.
*See Connally v. General Construction Co.,* 269 U.S. 385, 70 L.Ed.
322, 46 S.Ct. 126 (1926); *State v. Vestal,* 281 N.C. 517, 189 S.E. 2d
152 (1972); *State v. Furio,* 267 N.C. 353, 148 S.E. 2d 275 (1966);
*Surplus Store, Inc. v. Hunter,* 257 N.C. 206, 125 S.E. 2d 764 (1962).

In *N.A.A.C.P. v. Button,* 371 U.S. 415, 433, 9 L.Ed. 2d 405,
418, 83 S.Ct. 328 (1963), the United States Supreme Court stated:

> "[T]he objectionable quality of vagueness and overbreadth
> does not depend upon absence of fair notice to a criminally
> accused or upon unchanneled delegation of legislative powers,
> but upon the danger of tolerating, in the area of First
> Amendment freedoms, the existence of a penal statute
> susceptible of sweeping and improper application. Cf. *Marcus
> v. Search Warrant of Property, etc.,* 367 US 717, 733, 6 L ed
> 2d 1127, 1137, 81 S Ct 1708. These freedoms are delicate and
> vulnerable, as well as supremely precious in our society. The
> threat of sanctions may deter their exercise almost as potent-

ly as the actual application of sanctions. Cf. *Smith v. California,* supra (361 US at 151-154); *Speiser v. Randall,* 357 US 513, 526, 2 L ed 2d 1460, 1472, 78 S Ct 1332. Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." (Citations and footnotes omitted.)

In *N.A.A.C.P. v. Button, supra,* the Virginia State Legislature had sought to prohibit the solicitation of legal or professional business by the N.A.A.C.P. The Supreme Court noted that only a compelling state interest could justify a limitation of First Amendment freedoms. Likewise, only a compelling state interest could justify infringement upon plaintiffs' First Amendment rights. Indeed, the Legislature's very attempt to define, of its own accord, who church members are is constitutionally suspect. *See Bouldin v. Alexander,* 82 U.S. (15 Wall.) 131, 21 L.Ed. 69 (1872).

In summary, we have held that: (1) plaintiffs' solicitation of religious funds from nonmembers is a religious activity protected by the First Amendment of the United States Constitution; (2) G.S. 108-75.6 and G.S. 108-75.18(4) act as a prior restraint on the exercise of religion and violate the First and Fourteenth Amendments of the United States Constitution; (3) Sections (2), (3), and (4) of G.S. 108-75.18 constitute an impermissible delegation of legislative powers in violation of Article I, § 6 and Article II, § 1 of our State Constitution; (4) G.S. 108-75.7(a)(1) constitutes an establishment of religion and violates the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (5) G.S. 108-75.7(a)(1), (5), (7), and (8)'s exemptions are violative of the Equal Protection Clauses of the United States and North Carolina Constitutions, because they (a) are arbitrary and irrational, (b) impermissibly infringe upon First Amendment freedoms, and (c) discriminate against preferred freedoms of nondenominational religious groups while favoring secular groups; (6) G.S. 108-75.18(6)'s thirty-five percent limitation on solicitation and fund-raising expenditures of religious groups violates freedoms protected by the First Amendment of the United States Constitution; (7) G.S. 108-75.20(h)(2)'s prohibition of in-state solicitation of funds without affording a prior opportunity to be heard as to present fitness to solicit creates an irrebuttable presumption in violation of the Due Process Clauses of the United States and

North Carolina Constitutions; (8) G.S. 108-75.7(a)(1) and (5)'s exemptions for organizations which solicit primarily or entirely from their own "members" are void for vagueness.

Our decision does not preclude the Legislature from enacting a statute which could constitutionally prevent the fraudulent solicitation of our citizens.

The judgment entered below is

Affirmed.

Judge MARTIN (Robert M.) concurs.

Judge MITCHELL concurring.

I completely concur in the well-reasoned and learned opinion of the majority with the single exception of that portion of the opinion in which the majority finds that the thirty-five percent limitation on solicitation and fund-raising expenditures of charitable organizations set forth in G.S. 108-75.18(6) constitutes a violation of the First Amendment to the Constitution of the United States. With regard to that part of the opinion of the majority relating to G.S. 108-75.18(6), I concur only in the result reached.

I do not think that subsection (6) of that statute violates the First Amendment. *See National Foundation v. City of Fort Worth*, 415 F. 2d 41 (5th Cir. 1969), *cert. denied*, 396 U.S. 1040, 24 L.Ed. 2d 684, 90 S.Ct. 688 (1970). I would instead hold that by permitting the Secretary of the North Carolina Department of Human Resources to waive the thirty-five percent limitation when "special facts or circumstances are presented" justifying greater expenses in connection with solicitation and fund-raising, subsection (6) constitutes an unconstitutional delegation of the legislative power of the General Assembly to the Secretary in violation of Article I, § 6 and Article II, § 1 of the Constitution of North Carolina. I would not find the offensive delegation of authority severable so as to save the remainder of the subsection (6), however, as it appears clear that the General Assembly would

not have enacted the subsection without the portion vesting discretion in the Secretary. *See Hobbs v. Moore County*, 267 N.C. 665, 149 S.E. 2d 1 (1966). I would declare the entire subsection unconstitutional on these grounds rather than the ground relied upon by the majority.