INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF HOUSTON, INC., a Texas Corporation, and Janardana Dasa, Plaintiffs,

v.

CITY OF HOUSTON, TEXAS, Jim McConn, Mayor, Houston, Texas, Harry Caldwell, Chief of Police, Houston, Texas, Earl J. Martin, Tax Assessor-Collector, City of Houston, Texas, Individually and in their Official Capacities, Defendants.

Civ. A. No. H–79–644.

United States District Court,
S. D. Texas,
Houston Division.

Nov. 9, 1979.

Nick D. Nicholas, Houston, Tex., for plaintiffs.

Ann L. Carleton, Asst. City Atty., Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

### STATEMENT OF THE CASE

Plaintiffs, International Society for Krishna Consciousness of Houston, Inc. ("ISKCON"), and Janardana Dasa, President of ISKCON's local temple seek declaratory judgment that Article IV of the Code of Ordinances of the City of Houston, "Solicitation of Funds for Charitable Purposes," §§ 37–41 through 37–53, as amended May 16, 1979,[1] is an unconstitutional deprivation of plaintiffs' rights under the first and fourteenth amendments to the United States Constitution, and a permanent injunction against its enforcement, pursuant to 28 U.S.C. §§ 2201–02 and 42 U.S.C. § 1983. Plaintiffs also seek attorney's fees and costs of the court.

Jurisdiction of the court is properly invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3), (4).

### PROCEDURAL POSTURE

The parties have agreed to and have entered a Stipulation of Facts and a Supplemental Stipulation of Facts. They have consented to waive a hearing and allow the court to enter judgment based on the stipulated facts and affidavits.

### FACTS

The stipulated facts are:

The plaintiff, the International Society for Krishna Consciousness of Houston, Inc. ("ISKCON"), is a Texas non-profit corporation and a bona-fide religious organization. Plaintiff Janardana Dasa is the president of the Society and is an ordained priest of the Society.

The defendants are the City of Houston, Jim McConn, Mayor of Houston, Harry Caldwell, Chief of Police of Houston, and Earl J. Martin, Tax Assessor-Collector of Houston. They are sued individually and in their official capacities.

Defendant Earl J. Martin is the Tax Assessor-Collector of the City of Houston, Texas and is charged under the Ordinance with the responsibility of issuing a certificate of registration and identification cards to persons desiring to solicit

---

1. The plaintiffs' complaint initially was based upon a previous version of the statute. During the course of the proceedings the ordinance was amended. Plaintiffs amended their complaint and have pursued their action against the amended ordinance.

funds for charitable or welfare purposes within the City of Houston.

Defendant Harry Caldwell is the Chief of Police of Houston, Texas and is charged with the responsibility of enforcing the Ordinance.

Defendant Jim McConn is the Mayor of the City of Houston and has the authority to dismiss the Chief of Police and Tax Assessor-Collector.

A fundamental religious obligation of the Society's members is to engage in the religious ritual of Sankirtan. A missionary religious practice, Sankirtan consists of speaking to members of the public about the Society's religious beliefs, disseminating religious publications by gift and sale and the solicitation of contributions from the public. The purpose of Sankirtan is three-fold: (i) to spread the Society's religious beliefs in order to save fallen souls; (ii) to financially support the Society's religious activities; and (iii) to attract new members. The funds generated by the practice of Sankirtan are used for the support of the Society.

Article IV, "Solicitation of Funds for Charitable Purposes," Sections 37–41 through 37–53, was duly enacted and in full force and effect as an ordinance of the City of Houston, Texas, prior to the enactment of Ordinance No. 79–829 on May 16, 1979. As amended by Ordinance No. 79–829, Section 37–41 through 37–53 (hereinafter "the Ordinance") are duly enacted and in full force and effect as an ordinance of the City of Houston, Texas. See appendix.

Members of the Society have been issued citations, prosecuted and fined for violation of the Ordinance as it existed prior to May 16, 1979, for failing to obtain a permit prior to soliciting. Dennis James Brown was prosecuted pursuant to the Ordinance on or about the 5th day of December, 1978, for soliciting funds during the practice of Sankirtan without first having obtained a permit from the City Tax Assessor-Collector.

Defendant City of Houston, by and through defendants Jim McConn, Harry Caldwell and Earl J. Martin in their offi-cial capacities, will continue to apply and enforce the Ordinance in such a manner as to require plaintiffs to obtain a certificate of registration and identification cards pursuant to the Ordinance prior to soliciting contributions during the practice of Sankirtan within the city limits of Houston.

Members of the Society have not applied for a certificate of registration to solicit contributions pursuant to the Ordinance as it now exists or for a license under the Ordinance as it existed prior to amendment on May 16, 1979.

The Ordinance establishes registration, identification and reporting procedures for all persons soliciting funds for charitable purposes. Any person or organization that wishes to solicit funds (except for three specified categories of solicitors, § 37–50) for charitable purposes must fill out a registration statement and submit the statement to the City Tax Assessor-Collector (§§ 37–42(a), 43, 50). Within ten days, the tax assessor-collector must approve of the application or explain why the statement does not satisfy the ordinance's requirements (§ 37–45). Upon approval, the tax assessor-collector will issue a Certificate of Registration (§ 37–45) and Solicitor's Identification Card to the applicant (§ 37–47). All solicitors must wear Identification Cards (§§ 37–42(c), 47). The Certificate of Registration is valid until the termination of the solicitation or for one year, whichever is less (§ 37–48). A new statement must be filed an approved in order to obtain a new certificate. Within 30 days after the solicitation, the registrant must file a financial statement regarding the costs, amount of contributions, and disbursements relating to the solicitation (§§ 37–43(j), 48). The registration fee is $5.00, regardless of whether a certificate is issued (§ 37–44). Ten identification cards are issued for free; additional cards can be purchased for their "actual cost" (§ 37–45). Any person who solicits funds without being duly licensed is subject to criminal penalties: a fine of not less than $5.00 nor more than $200.00; each act of solicitation constitutes a separate offense (§ 37–52).

## ISSUES

The plaintiffs contend that various terms and provisions of the ordinance are void for vagueness (§§ 37–43(9), 47, 49, 50(1)(2)(3)) and for overbreadth (§§ 37–42(c)(f), 43). They assert that the tax assessor-collector's power to reject an application for a permit is discretionary therefore, the absence of procedural safeguards violates the first amendment.

This court holds that Article IV of the Code of Ordinances violates the first and fourteenth amendments to the United States Constitution. The registration and exceptions sections contain various terms and provisions which are vague. The registration and final reporting provisions unnecessarily burden the plaintiffs' exercise of their first amendment rights. The registration, identification and reporting provisions are overbroad, and inhibit the freedom of association. The court grants plaintiffs' request for declaratory and injunctive relief, and authorizes plaintiffs to receive attorney fees and court costs.

## FIRST AMENDMENT

It is well established that the first and the fourteenth amendments protect the distribution of literature and the solicitation of funds for religious purposes from interference by state governments. In *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the Supreme Court held that an ordinance which imposed a substantial licensing tax on canvassing or soliciting funds within a municipality unconstitutionally invaded the rights of freedom of religion, freedom of speech and freedom of the press, when applied to the distribution and sale of religious literature by the Jehovah's Witnesses. The first amendment gives the practice of religion a protected status not enjoyed by commercial speech. That protected status does not depend upon the nature of the religious group or belief; unpopular sects are entitled to the same protection as conventional religious organizations. The court explained,

[T]he mere fact that the religious literature is "sold" by itinerant preachers rather than "donated" does not transform evangelism into a commercial enterprise. If it did, then the passing of the collection plate in church would make the church service a commercial project. The constitutional rights of those spreading their religious beliefs through the spoken and printed word are not to be gauged by standards governing retailers or wholesalers of books. The right to use the press for expressing one's views is not to be measured by the protection afforded commercial handbills. . . . It is plain that a religious organization needs funds to remain a going concern. But an itinerant evangelist however misguided or intolerant he may be, does not become a mere book agent by selling the Bible or religious tracts to help defray his expenses or to sustain him. Freedom of speech, freedom of the press, freedom of religion are available to all, not merely to those who can pay their own way.

319 U.S. at 111, 63 S.Ct. at 874.

Of course, the state may regulate the solicitation of funds to protect citizens from fraud and to insure public safety, welfare and peace. It may require a stranger in the community to establish his identity and his authority to act for the cause which he purports to represent before permitting him publicly to solicit funds for any purpose. But, the state may not exercise its power to regulate commercial solicitations in a manner that unduly infringes on the protected freedom to practice religion. *Cantwell v. Connecticut*, 310 U.S. 296, 304, 306–307, 60 S.Ct. 900, 903, 904–905, 84 L.Ed. 1213, 1218–1220 (1940).

The special protection afforded the practice of religion by the first amendment dictates rigorous standards for evaluating the constitutionality of a governmental act that allegedly invades the protected area. These rigorous standards are applied where it is alleged that the statute or government act is vague, an unnecessary burden on the practice of religion, overbroad, inhibits free association, or threatens the separation of church and state.

## VAGUENESS

■ There are two aspects to the claim of vagueness. One is the effect of the statutory language on the public; the other is the effect of the statute on the government. All statutes must be clearly drafted in order to provide citizens with notice of what behavior is prohibited. Yet, "stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217–218, 4 L.Ed.2d 205 (1959). At the same time, narrow, objective, and definite standards must guide authorities whose regulations restrain the exercise of first amendment rights. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

Applying these strict standards in *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), the Supreme Court held that an Oradell ordinance regulating soliciting and canvassing was unconstitutionally vague. The ordinance required advance notice to be given to the local police department by "any person desiring to canvas, solicit or call from house to house . . . for a recognized charitable . . . or . . . political campaign or cause in writing, for identification only."

The Supreme Court found that the Oradell ordinance was unconstitutionally vague in two respects. First, the scope of its coverage was unclear. The term "recognized charitable cause" was vague; the statute did not explain by whom the charity had to be recognized, whether by the Internal Revenue Service, a community agency, or a municipal official. Although the phrase "political campaign" was fairly clear, it was not clear what was meant by a Federal, State, County, or Municipal . . . *"cause."* Finally, it was not clear what groups were included in the class of "Borough Civic Groups and Organizations" also covered by the ordinance.

Second, the ordinance did not explain in detail what steps had to be taken to comply.

The content of the notice and the identification card was not specified, thus compliance with the statute was a hit or miss proposition.

The Fifth Circuit applied the same strict test for vagueness in *ISKCON v. Eaves,* 601 F.2d 809 (5th Cir. 1979) to invalidate an Atlanta, Georgia ordinance which regulated the distribution of literature and solicitation of funds at a municipally owned airport. One provision of the ordinance prohibited solicitors from "hampering or impeding the conduct of any authorized business at the airport." The Fifth Circuit stated that:

> "[A]ny law is unconstitutionally vague if people 'of common intelligence must necessarily guess at its meaning and differ as to its application.' *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Measures affecting first amendment rights must be drafted with an even 'greater degree of specificity'. E. g., *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)."

at 830.

The Fifth Circuit explained that:

> "[A]ll vague statutes are unacceptable partly because they 'encourage[] arbitrary and erratic arrests and convictions,' . . . and 'arbitrary and discriminatory application,' . . . similarly, vague measures regulating first amendment freedoms enable low-level administrative officials to act as censors, deciding for themselves which expressive activities to permit. The very existence of this censorial power, regardless of how or whether it is excused, is unacceptable."

at 822–823 (cites omitted).

The Fifth Circuit Court held that the provision prohibiting soliciting from hampering or impeding business was vague. It was not clear what actions hampered or impeded business. Several constructions were plausible. Hampering business might mean soliciting from people who are attempting to purchase an airline ticket or a newspaper. It might include soliciting

from people who are on their way to purchase a ticket or a newspaper. Hampering business also might encompass the adverse effect on nearby businesses of leaf-letting or soliciting for an unpopular cause. Since people of common intelligence would not know what behavior is prohibited, the Fifth Circuit held that the provision of the ordinance was unconstitutionally vague.[2]

■ Article IV of the Code of Ordinances of the City of Houston is unconstitutionally vague. It fails to provide citizens with adequate notice of the scope of the statute and the requirements for compliance. As a result of its vagueness, the statute vests municipal officials with discretionary power to interpret the ordinance. Vagueness plagues three sections of the ordinance: (1) the exceptions (§ 37–50), (2) the registration statement (§ 37–43), and (3) the issuance of the Certificate of Registration (§ 37–45). The exceptions section, § 37–50, has three subsections, all of which are vague. Section 37–50(1) exempts from the operation of the registration requirements "organizations or associations" if they solicit from their own "members". But, the statute does not define "organization" or "member". Organization might refer to "all persons", as defined in § 37–41(c), i. e. natural persons, firms, partnerships, and corporations, but not associations. Alternatively, "organization" might refer only to structured groups with officers, committees, and large membership, in which case natural persons and small partnerships might not be exempt. Evidently, the term "organization" as used in Section 37–50(1) is vague.

The ordinance also does not define "members".[3] This problem may not be remediable for two reasons. First, the concept of membership in a religion eludes objective definition. A religious organization may establish standards for membership in its own group, but these standards vary from group to group. Who is a member of any group cannot be defined in objective terms. Thus, the exception (§ 37–50(1)) which allows religious organizations to solicit funds from its own members without registering is inherently vague.

If the statute allowed the denominations to define members for themselves, i. e. subjectively, then the exception would encompass as many different solicitations as there are definitions of membership. Ascertaining whether any particular solicitation is entitled to be excepted would involve the city in a most difficult and, in light of the court's opinion of the registration requirements, a most unnecessary determination.

■ Second, the statute implicitly distinguishes between the institutionalized practice of religion and the non-institutionalized practice of religion, according the former a preferred status. In effect, under § 37–50(1) of the Ordinance, a religious group which has formal membership criteria and lists may solicit from its own members without registering. A religious group which does not have formal membership criteria or lists may not be able to show the city that it is soliciting from its own members and therefore, it would be required to register. However, the practice of religion does not require formal membership in any group. A person may espouse and practice whatever religious doctrine he believes without affiliating with a group. The Constitution affords its protection to the practice of religion without discriminating among the various institutional arrangements different groups of like-spirited individuals develop and without distinguishing between individuals who belong to organized religious groups and individuals who practice their religion without affiliating

2. See, also, *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Schneider v. State (Town of Irvington)*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Staub v. Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *ISKCON v. Rochford*, 585 F.2d 263 (7th Cir. 1978).

3. See also, *Heritage Village Church and Missionary Fellowship, et al. v. North Carolina*, 40 N.C.App. 429, 253 S.E.2d 473 (1979) holding that the provision of the North Carolina regulations of solicitations by religious organizations which used the term "members" without defining it was void for vagueness. 253 S.E.2d at 486–487.

with an organization. Due to the exception for solicitations from members (§ 37–50(1)) and the vagueness of the term "members", the registration requirements of the ordinance impinge most severely on the practice of religion by unaffiliated religious individuals and by individuals affiliated with informal groups, in violation of the first amendment.

Subsection (2) of the exceptions section exempts from the registration requirements solicitors who solicit . . . "with the permission of the person who owns or controls the premises." As with Subsection (1), key terms are not clearly defined. Who controls premises is not specified in the ordinance, and it may not be subject to clear definition. For example, who controls the premises of church: the board of trustees of the church, the minister, or the board of deacons? Who controls non-church premises: the owner, the lessee, a visitor, or the superintendent who has a key? The Ordinance does not explain what constitutes "permission". It does not specify whether permission must be in writing, whether oral permission is sufficient, or whether oral permission would include the permission implicit when a solicitor knocks on a door and the occupant voluntarily opens the door to talk with the solicitor. Thus, Subsection (2) of § 37–50 is vague.

Subsection (3) simply is not clear. It states that "[t]he issuance of any announcement or advertisement that such solicitation as described in Subsections (1) and (2) above will occur or which announces or advertises an event at which unannounced solicitation as described in (1) and (2) above occurs." Since Subsections (1) and (2) are vague, Subsection (3) also must be vague. Even if Subsections (1) and (2) were not vague, Subsection (3) would be confusing. It does not specify to whom the announcement must be made. For example, it is not clear whether a solicitation announced to the owner of a shopping center, but not announced to the lessees in the shopping center or the patrons of the center would be excluded. The language of the statute supports the conclusion that the exemption

would apply. However, the patrons of the shopping center are the citizens who the city is trying to assist by requiring registration, so the exemption would not make sense.

Since the statute does not narrowly define the terms "organization", "membership", "permission", "control", or the provisions of § 37–50(3), who is excepted from the registration provisions of the ordinance is undeterminable. A person who is planning to solicit contributions would not know whether or not the registration requirements applied to him. Thus, this court finds that § 37–50 of Article IV of the Code of Ordinances of the City of Houston is void for vagueness.

Clarifying the scope of the ordinance would not cure the statute's other infirmities. Section 37–43 of Article IV sets forth the information required in the registration statement. Various subsections contain terms which are vague, making precise compliance with the registration regulations difficult. Subsection (3) of § 37–43 requires an applicant to write "[a] brief description of the person registering, the charitable purpose for which the funds are to be solicited, and an explanation of the intended use of the funds toward that purpose." The ordinance does not pinpoint what kind of information is desired regarding the person registering. The ordinance does not explain the difference, if any exists, between a "brief description" and an "explanation," or between charitable "purpose" and intended "use". Thus, Subsection (3) does not provide adequate notice of what information is necessary to register.

Subsections (5) and (9) are also ambiguous. Subsection (5) requires the "names . . . of all individuals who will be in direct charge or control of the solicitation of funds." Exactly whose names the subsection requires is not evident. It could require the names of the people who planned the solicitation or those who count all the contributions. Or, it could require the names of the solicitors who will be directly involved with and will control the funds "in the field." Since sev-

eral interpretations are reasonably possible, Subsection (5) is vague.

■ Subsection (9) requests "[a] projected schedule of . . . expenses . . to be expended and paid in connection with the solicitation of funds or in connection with their disbursement, and an estimated percentage of the total projected collections which the costs of solicitation will comprise." Again, it is not clear what information is required. The percentage figure desired compares the cost of solicitation with the total collections. Yet the subsection also requests (it does not require) the cost of disbursement to be supplied for no apparent reason. A more meaningful figure would be a comparison of the costs of solicitation and disbursement with the total collection. That figure would show the donor how much of his donation actually aids needy people or charitable projects. But in order to obtain the data necessary to ascertain this percentage, the tax assessor-collector would have to read in a requirement that the costs of disbursement be disclosed, rather than construing the provision as a request. Such an interpretation would constitute either a discretionary act by the tax assessor or an act beyond the scope of his power, neither of which are constitutional. Thus, Subsection (9) of § 37–43 is vague.

This court finds that the registration statement, § 37–43, contains ambiguous terms and provisions which fail to notify an applicant of the steps necessary for compliance with the registration regulations. This court holds that § 37–43 is void for vagueness, in violation of the first and fourteenth amendments.

Section 37–45, regarding the issuance of Certificate of Registration, presents another problem of vagueness in Article IV of the Code of Ordinances, and a related issue of the exercise of discretionary power absent procedural safeguards. Section 37–45 states that:

After a review of the registration statement to determine its compliance with Section 37–43 . . . the City Tax Assessor and Collector *shall either* issue a Certificate of Registration . . . *or*

notify the person registering that the registration statement does not comply with the requirements of Section 37–43 . . . and specifically point out what information or explanation has not been furnished that is required before a Certificate of Registration can be issued. (Emphasis added.)

This section appears to make the issuance of the certificate depend upon only two objective facts: (1) whether information is provided and if not, (2) whether an explanation for the failure to supply the information is provided. If this is the case, as the defendants contend, then the provision is not vague and the tax assessor-collector would not evaluate the answers given. His duty would be purely ministerial.

However, if the issuance of the certificate does not depend upon the accuracy or completeness of the statements, as evaluated by the tax assessor-collector, then the registration statement would fail to serve any governmental purpose. It would neither provide the public with accurate information about which causes to support nor prevent fraud, the two government purposes allegedly served by the ordinance. The entire article would violate due process because it would fail to serve a legitimate government interest, while unconstitutionally restraining first amendment activities.

If the registration statement is to serve its purpose, then the tax assessor-collector must be expected to exercise some discretion when reading and evaluating the application. Under such circumstances, the apparently objective facts adopt subjective qualities. The tax assessor-collector must determine the accuracy and adequacy of the information provided and the explanations given.

■ However, the ordinance lacks procedural safeguards on the exercise of discretionary power by the tax assessor-collector, in violation of the first amendment. An ordinance which restrains a person from exercising his first amendment rights prior to the actual expression is constitutionally invalid where the ordinance vests discretion

in municipal officers without providing procedural safeguards. *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).[4]

■ It is not clear whether Section 37–45 sets forth a ministerial decision making process or a discretionary one. In that respect, Section 37–45 is vague and unconstitutional. Consequently, the court does not reach the second question of the absence of procedural safeguards. Should the statute be amended to give the tax assessor-collector such discretion, then the absence of procedural safeguards, as outlined in *Freedman v. Maryland,* would be unconstitutional.

### UNNECESSARY BURDEN, OVERBREADTH, FREEDOM OF ASSOCIATION

Clarifying the vague terms and provisions of Article IV will not render it free of constitutional infirmities. First, the abundance of information required in the Registration Statement (§ 37–43) and Financial Statement (§ 37–48) regarding membership, financial status, and previous solicitations unnecessarily burden the plaintiffs' exercise of religion. Second, the statements are overbroad; they do not narrowly serve the government's alleged interests. Third, the content of the Registration and Financial Statements impinges on the freedom of association.

### UNNECESSARY BURDEN

■ In *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) the Supreme Court stated that:

[T]he general regulation, in the public interest, of solicitation, which does not involve any religious test and *does not unreasonably obstruct or delay the collection of funds,* is not open to any Constitutional objections.

310 U.S. at 305, 60 S.Ct. at 904 (Emphasis added).

But, a regulation that does unreasonably obstruct or delay the collection of funds is objectionable.

Citing *Cantwell v. Connecticut,* the district court in *Cherris v. Amundson,* 460 F.Supp. 326 (E.D.La.1978) held that the Parish, Louisiana Code, which regulated the solicitation of funds and distribution of literature by organized religious groups, imposed an unnecessary burden on the exercise of the plaintiffs' first amendment rights. The challenged statute required, inter alia:

The names and addresses of the applicant's principal officers and managers . . . a [certified] copy of the resolution, if any, authorizing such solicitation . . . . "The purpose for [the] solicitation . . . the total amount of funds . . . to be raised . . . and the [proposed] use or disposition . . . of any [funds raised]". . . . "[t]he name and address of the [person(s)] by whom [disbursements of the funds will be made] . . . the names and addresses of those in charge of the solicitation" . . . . "An outline of the method . . . to be used in conducting the solicitation" . . . "A financial statement for the last preceding fiscal year". . . . "A full statement of the

4. In *Freedman v. Maryland,* 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Supreme Court outlined four safeguards that must be provided when a public official or official body has the power to issue licenses for the exhibition of films on a discretionary basis. The safeguards apply to licensing procedures for other forms of expression where the exercise of discretion is involved. The safeguards are: (1) the licensing body must, within a specified brief period, either issue a license or go to court to restrain the activity. (2) Any restraint imposed in advance of final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. (3) The licensor has the burden of proving that the activity is unprotected. (4) A prompt final judicial determination must be assured. *Accord, Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159, 169 (5th Cir. 1978); *Swearson v. Meyers,* 455 F.Supp. 88 (D.Kan. 1978). Cf. *ISKCON v. Rochford,* 585 F.2d 263 (7th Cir. 1978) extending the requirement of procedural safeguards to licensing ordinances which act as a prior restraint on first amendment expression, but do not vest discretionary power in a municipal body.

character and extent of the religious work being done by the applicant within the Parish of Jefferson"; and "[s]uch other information as may be submitted to the director in order for him to determine the kind and character of the proposed solicitation". . . . [A] permit is only good for 30 days, and . . . a full application must be submitted for renewal of the permit. . . . [W]ithin 30 days after the solicitation has been completed, a permit holder must submit "a detailed report . . . showing the amount raised by the solicitation, [a]nd the amount expended in collecting such funds."

460 F.Supp. at 327–328.

The district court held that the plethora of information required in the statement unreasonably obstructed the plaintiffs' exercise of first amendment rights, especially where a new permit had to be obtained every 30 days. In addition, the court ruled that the ordinance unconstitutionally vested "unbridled discretionary power" in a municipal officer.

█ Houston's Registration and Financial Statements, (§§ 37–43, & 48), require substantially the same information as the Parish, Louisiana ordinance required and they impose a similar burden on the plaintiffs' exercise of their first amendment rights. The Registration Statement requires a religious group to list the names and addresses of all its partners, officers, or association members (§ 37–43(2), (b), (c), (d)), and the names of all individuals in charge of the solicitation and authorized to disburse the proceeds of the solicitation (§ 37–43(b)(4)). The registrant must include the purpose of the solicitation, the amount of money anticipated, how the funds will be used, the method and the costs of solicitation (§ 37–43(3)(7)(8)(9)). The religious group must list the names of "any other cities in which the [firm, partnership, corporation, or association] registering has solicited funds for charitable purposes within the past five years (including only the ten most recent solicitations) (§ 37–43(10)).

The charity must provide the names of any individual who will solicit funds who was convicted of a felony involving moral turpitude within the past seven years, and the nature of the offense, the state where the conviction occurred, and the year of the conviction (§ 37–43(12)). Section 37–48, requires the religious groups to reapply for a certificate "at the termination of the solicitation period specified in the registration statement or one (1) year from the date of issuance, whichever is less." It also requires the registrant to file a "closing statement regarding the solicitation of .funds . . . showing the total funds collected . . . and the purpose and amount for which such funds were disbursed by the person registering, and any incurred but unpaid expenses resulting from the solicitation of funds." The requirement that an applicant provide this magnitude of information as a condition of the issuance of a certificate unduly burdens the applicant's exercise of his first amendment rights.

## OVERBROAD

█ The Registration and Financial Statements are overbroad. A regulation affecting first amendment rights is overbroad when,

[A]lthough lacking neither clarity nor precision . . . [it] offends the constitutional principle that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms'. *NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325, 338.

*Zwickler v. Koota,* 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444, 451 (1967).[5] As stated previously, the government has a legitimate interest in regulating solicitation of funds in order to protect citizens from fraud and to insure public safety, welfare and peace. *Cantwell v. Conn., supra.*

█ Article IV of the Houston Municipal Code serves only one legitimate govern-

---

5.  *Accord, Le Flore v. Robinson,* 434 F.2d 933, 935, 936 (5th Cir. 1970).

ment interest, but it does so by means which sweep unnecessarily broadly. The Mayor and City of Houston argue that the registration provisions "allow the general public access to basic information about those who solicit funds for charitable purposes. . . . The public can [inspect them and] then make an informed judgment about which causes it wishes to support by its contributions." (Defendant's Memorandum in Opposition to Preliminary Injunction at 10.) They also suggest that the ordinance protects citizens against fraud. Providing the general public with information is not one of the enumerated government purposes which justifies regulation of religious solicitation thus, that alleged government interest is not legitimate.

Preventing fraud clearly is a legitimate government interest however, Houston's ordinance does not narrowly serve that purpose. First, despite the abundance of information required, the ordinance may not prevent fraud. There is no mechanism provided in the ordinance for evaluating the veracity of the registration statements or for monitoring the solicitations and disbursements.. A charlatan could register without answering the questions in an honest and informative fashion, receive a certificate and identification card, and solicit funds for his fraudulent cause. The city cannot attest to the reliability of the information disclosed, and therefore cannot provide the public with accurate information or prevent fraud.

Assuming that registration and disclosure requirements, in and of themselves, deter people from engaging in fraud, then the ordinance requires disclosure of more information than necessary to deter fraudulent behavior. A simple registration statement would act as a deterrent without making extensive disclosure a condition of practicing a religion. A form stating the name, address, and purpose of the organization, the name and address of a responsible contact person in the organization, the planned use for the solicited funds, and the dates of the solicitation would deter from registering people who would commit fraud. A

citizen who is interested in learning even more about the charity could contact the person listed on the registration statement to obtain detailed financial information. The citizen could inquire yet further at the Better Business Bureau of Houston, the State Attorney General's Office, or the Office of the Secretary of State where local charities would register for tax exempt status.

Thus, Sections 37–43 and 37–48 of Houston's Code of Ordinances are overbroad. They infringe on the plaintiff's practice of religion and free expression without narrowly serving the government's purpose of preventing fraud, in violation of the first amendment.

## FREEDOM OF ASSOCIATION

The subsections of the Registration Statement which require the applicant to list the names of all the partners, officers or directors, or members (up to ten) of a partnership or corporation, or association respectively, (§ 37–43(2)) and the section of the ordinance which requires all solicitors to "visibly display an identification card" (§ 37–42(c)) have a chilling effect on the freedom of association, in violation of the first amendment. In *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that mandatory disclosure of the N.A.A.C.P.'s membership lists had a deterrent effect on the enjoyment of the right to associate freely, in violation of the first amendment. The court emphasized the importance of preserving the right of an individual to associate with an organization—political or religious—without the public's or the government's knowledge.

[It] is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious, or cultural matters . . . [S]tate action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny. . . . Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association,

particularly where a group espouses dissident beliefs. 357 U.S. at 460–462, 78 S.Ct. at 1171–1172.

Even where the specially protected freedoms to practice religion or express political beliefs are not involved, the First Circuit has declared unconstitutional two ordinances that require individuals who solicit funds to wear identifying badges. In *Strasser v. Doorley,* 432 F.2d 567 (1st Cir. 1970), the First Circuit held that the provision of a Providence, Rhode Island registration and licensing ordinance that required bootblacks and newsboys wear numbered metal badges on their hats was unconstitutional. It stated that wearing a badge might cause the plaintiffs "to suffer the felt stigma of having to display a button. In the face of [this] burden[ ] upon the exercise of first amendment rights, defendants point to no governmental interest of any importance that would be served by . . . identification. We therefore hold [this] requirement[ ] of the ordinance . . unconstitutional." 432 F.2d at 569.

In *Wulp v. Corcoran,* 454 F.2d 826 (1st Cir. 1972) the First Circuit invalidated a Cambridge, Massachusetts ordinance which required newspaper vendors to obtain a permit from a licensing board vested with discretionary power, and to wear an official badge. The Court stated that even if the licensing procedure were constitutional there would be a substantial question regarding the constitutionality of the badge requirement. The Court noted that:

[P]rinted materials distributed anonymously 'have played an important role in the progress of mankind.' [*Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 538, 4 L.Ed.2d 559 (1960)]. In the absence of an important governmental interest—not advanced here—that would be served by forced identification, with the consequent fear of reprisals that such identification may well entail, we hold that the Cambridge Ordinance may not stand.

454 F.2d at 834.

The only governmental interest allegedly served by the ordinance was traffic control in the Harvard Square area. The Court stated, "While traffic control may be a legitimate governmental objective . . . there are means available to the City of Cambridge for accomplishing such an objective which do not impose the sort of restrictions of First Amendment right as are involved here." 454 F.2d at 834 (cite omitted).[6]

---

6. *See also, ISKCON v. Lentini,* 461 F.Supp. 49 (E.D.La.1978), enjoining enforcement of a Kenner, Louisiana Ordinance and New Orleans Aviation Board regulation of the solicitation of funds at the New Orleans Airport, including the provision which required solicitors to wear identification cards. *But see, City of Manchester v. Leiby,* 117 F.2d 661 (1st Cir. 1941), *cert. denied,* 313 U.S. 562, 61 S.Ct. 838, 85 L.Ed. 1522 (1941), upholding an ordinance which required street vendors to wear a badge which was issued as a matter of routine ministerial duty from the superintendent of schools. In the court's opinion, "This reasonable police regulation . . . imposes no substantial burden upon the freedom of the press or the free exercise of religion," especially since it applied generally and was not directed against any sect or creed. 117 F.2d at 666. This case was not cited in *Strasser v. Doorley, supra,* or *Wulp v. Corcoran, supra.* Three district courts also have allowed the use of visible identification cards to regulate the solicitation of charitable contributions in specified locations. In *ISKCON v. McAvey,* 450 F.Supp. 1265 (S.D.N.Y.1978), the court refused to grant a preliminary injunction to prevent enforcement of the New York Port Authority's regulations of solicitations for funds by ISKCON in the World Trade Center; the regulations required visible identification. In *ISKCON v. Bowen,* 456 F.Supp. 437, 445 (S.D.Ind.1978), the court enjoined enforcement of the Indian State Fair Regulations of solicitations for charitable organizations at the state fair, but a condition of the injunction was that solicitors wear identification cards. In *ISKCON v. Griffin,* 437 F.Supp. 666 (W.D.Pa.1977), the court invalidated several portions of an ordinance that regulated solicitations for charitable contributions in the Pittsburgh International Airport, but let stand the identification card requirement. These district court cases are distinguishable from the cases cited in the text and from Houston's ordinance in two respects. First, in none of these did the district court discuss or explicitly rule on the validity of an identification requirement; the decisions do not indicate whether the constitutionality of such a requirement was ever questioned. In this case, as in the First Circuit cases, the court is confronted with a direct challenge to the constitutionality of the visible identification requirement. Second, the regulations in the other district

There are two concerns underlying the Supreme Court's statement and two First Circuit decisions regarding mandatory disclosure of membership and wearing an identification card. They are protecting the solicitors from being stigmatized or harassed and preventing them from becoming inhibited to express their beliefs, practice their religion, or associate freely. It is difficult to assess the impact Houston's mandatory disclosure of membership or municipally compelled visible identification would have on the plaintiffs. Disclosure of membership or officers might inhibit some people from becoming members of a religious association or from becoming officers of the organization. Similarly, mandatory wearing of an identification card might inhibit people from soliciting and it might stigmatize the solicitors. However, an identification card also might assist them in disseminating their ideas and literature, and in collecting money. Strangers might be more willing to open their doors or stop on the street to talk with a person who has a visible identification card which shows only that the solicitor's group has registered with the city.[7] The public might feel protected against fraud and the solicitors might enjoy greater public approval and receptivity.

Yet, the benefits of identification might be achieved without the potentially stigmatizing effect of compelled visible identification. Solicitors could be required to carry identification cards and to display them to potential donors upon request, or to supply the donor with the same information which is contained on the identification card. If the solicitor wished to wear the card, he could.

■ In light of the protected status of religion in our constitutional system, the court is particularly sensitive to the possibility that the practice of religion may be inhibited by governmental action. Consequently, this court holds that § 37–43(2) regarding disclosure of names of members, partners, and officers, and §§ 37–43(c) and 47 regarding the solicitor's identification cards violate the first amendment.

Based on the preceding statement of the facts and law, this court hereby declares §§ 37–43, 45, 47, 48, 50 of the Code of Ordinances of the City of Houston unconstitutional and grants plaintiff's request for a permanent injunction against their enforcement.

## ATTORNEYS FEES AND COSTS

■ This court holds that plaintiffs are entitled to attorneys fees and court costs pursuant to 42 U.S.C. § 1988 (1976). *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). A hearing will be held to determine the amount of fees due the plaintiffs.

Therefore, it is hereby Ordered, Adjudged, and Decreed that plaintiffs' request for a permanent injunction be, and the same is granted.

It is further Ordered, Adjudged, and Decreed that plaintiffs' are entitled to attorneys' fees and court costs, the amount of which will be determined at a hearing.

---

court cases pertained to solicitations in specific, highly congested places where insuring obstacle-free passage may be important to the smooth operation of the facility. They did not affect solicitations throughout the city, as does Houston's ordinance.

**7.** The card "shall bear the name of the person registering, the registration number, the name of the solicitor or agent, the expiration date of the certificate of registration and it shall have printed prominently thereon in red: 'This identification card is not an endorsement of the solicitation by the City of Houston or any of its officers or employees.' " § 37–47.